## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JASON JANDERNOA,**
        Plaintiff,

**v.**

**LLOYD J. AUSTIN III,**
**Secretary of Defense,**
        Defendant.

**CASE NO.:      21-cv-853**

**PLAINTIFF DEMANDS A JURY**

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

## COMPLAINT and JURY DEMAND

### STATEMENT OF THE CASE

Jason Jandernoa is a 47-year-old employee of the Defense Logistics Agency in Battle Creek, Michigan. He is a deeply experienced expert in working with the NATO cataloging system. The cataloging system is important because it is utilized by our military, and our allies, in providing real-time information to our and their soldiers during live combat. The systems also coordinate information with our allies during peace time. Mr. Jandernoa's function, integrating the systems with our allies, tracks directly to saving lives in the field by providing information they need. Mr. Jandernoa applied for a promotion to one of two available positions that would

1

benefit from his vast experience. But the Selecting Officer, Melissa Durham, passed him over in favor of two younger, less experienced, and less qualified candidates, one of whom was her close personal friend. Ms. Durham's failure to promote Mr. Jandernoa was based, at least in part, on adverse consideration of his age. The tragedy of all of this is that less qualified persons are now in positions upon which people's *lives depend* because of nepotism and prejudice. Mr. Jandernoa has therefore brought this suit under the Age Discrimination in Employment Act.

## JURISDICTION AND VENUE

1.     This is a claim for violation of the Age Discrimination in Employment Act by a federal agency, pursuant to 29 USC § 633a.

2.     Plaintiff is, and at the time of the events described in this Complaint was, a permanent resident of New Salem, Michigan whose regular place of business was in Battle Creek, Michigan. He was, and currently is, employed as a civilian employee by the Defense Logistics Agency ("DLA") in Battle Creek, Michigan.

3.     The proper defendant to a discrimination suit by federal employees is the head of the offending federal agency or department.[1] The DLA is a component of the United States Department of Defense ("DOD"). The DOD has determined that the Defendant, the Honorable LLOYD J. AUSTIN III, SECRETARY OF DEFENSE, shall be named as the defendant in any civil action filed against the DOD.

4.     This claim stems from DOD's actions towards Plaintiff during the course of his employment that occurred in Battle Creek, Michigan which is within the Western District of Michigan.

---

[1] *See, eg Crawford v. Hagel,* 14-cv-539 at *2 n 1 (WD MI Oct 20, 2014).

2

5.     The Court may exercise personal jurisdiction over the Defendant by reason of his, and the DOD's, permanent business presence and direction of activities to the Western District of Michigan.

6.     The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

7.     Venue is properly laid in the Western District of Michigan, pursuant to 28 USC § 1291(b)(2) because a substantial portion of the events giving rise to this Complaint occurred herein.

**ALLEGATIONS**

8.     Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

9.     Plaintiff has been employed at DLA Disposition Services in Battle Creek, Michigan for a just over 9 nears. He was, at the time of the events in this Complaint, 47 years old. In November of this year he will turn 48.

10.    At the time of the events in this Complaint, his official job title was LSA New Item Team Lead. He also worked in the NATO Maintenance area but there was no actual job title. As of today, he is currently the NATO Maintenance Team Lead.

11.    At the time of the events described in the Complaint, Plaintiff's supervisor was Daniel Gonzalez. Plaintiff also reported to Ron Fleck, when filling in as a Team Lead in the NATO area. Mr. Fleck is currently Plaintiff's supervisor.

12.    Melissa Durham, DLA's Supervisory Logistics Information Specialist, Branch Chief, GS-13 was the supervisor in the National Cataloging Branch or "NCB" area. This was the area in

which the Position that Plaintiff was applying for was posted. She was, at the time of the events in this Complaint, 37 years old.

13.    In or about October of 2019, Plaintiff applied for promotion to a vacant position similar to the Position described to follow. Plaintiff's resume, and other items, were reviewed by DLA's Human Resources. HR, in turn, sent the information to a hiring board to review. Ultimately, he was granted an interview and his resume was reviewed by Melissa Durham. Plaintiff's resume indicates he entered the US military service in 1993, which would have indicated to Durham that he is over the age of 40. Plaintiff interviewed for the position on or about October 20th, 2019. Ms. Durham, ultimately, chose not to grant Plaintiff the position he applied for.

14.    The failure to hire was particularly suspicious. In reviewing the documents-DLA never awarded me a Veterans Preference of 10 points, as he is a Disabled veteran of more than 30 percent.  The letter from the VA was included in that package as well.

15.    On September 11, 2020 the DLA posted a position for a Logistics Data Analyst, GS-0301-12 (hereinafter "the Position").

16.    The duties of the Position were described as follows:

responsible for DLA Logistics Information Service planning, development, and implementation of provisioning and cataloging support strategies; acts as an advisor and a subject matter expert on international cataloging information systems to aid in accomplishing the agency's mission; serves as the International Cataloging Data Exchange or Policy consultant; coordinates with and working closely with cataloging, system and information technology specialists across multiple agencies and private industries; develops and implements a wide variety of studies, analyses, evaluations, and assessments that relate to what the actual impacts of cataloging programs; performs continual review of provisioning/cataloging data and the impacts on DLA International operations; responsible for providing to higher level management and lower graded personnel expert opinions, decisions, and recommendations on international cataloging data management issues; and develops and provides high-level presentations, briefings, functional descriptions, and other related documentation to the stakeholders of DLA Logistics Information Service.

17. The "implementation of provisioning" language was, upon information and belief, specifically added by Mrs. Durham so that Jameson Ford would come back as qualified. He worked exclusively in the provisioning area and has never worked NATO items.

18. State more plainly, the Positions were significant in integrating the various military cataloging system our allies, the other members of NATO, use with our own. This is an extremely technical position in that it involves getting several different systems to work seamlessly to provide meaningful, real-time information often to persons involved in active combat.

19. Plaintiff was uniquely suited for the Positions. The bulk of his experience in his 9 years working for DLA has been with NATO. Two of the Supervisors in the NATO area consider him to be a Subject Matter Expert in that area. There is not another cataloger in the NATO area with his knowledge or experience. He worked, and continues to work, daily in the NATO area. He helped *re-write* procedures in the New Items area, and the NATO Maintenance area, which demonstrates his superior knowledge of the systems. He is the expert that the NATO Liaisons, catalogers, and others come to for advice on items. He has, at times, *filled in* as the Team Lead for the NATO Maintenance area. At one time he had 14 people, working in two different workloads, that he had to verify were completing items correctly. When he moved to his current position, he trained three new Team Leads in the LSA area; it took three people to replace him.

20. The DLA's standard procedure for job placement includes an initial screening of applicants' resumes to assure they meet the qualifications of the position. Those who pass muster are then approved to attend a Behavioral Based Interview or "BBI." Positions are filled based on a review of the resume and qualitative analysis of the results of the BBI.

21. Plaintiff submitted his application for the Position along with his resume.

22.    He was found to be qualified, and was therefore submitted to a formal Behavioral Based Interview (BBI).

23.    The interview panel consisted of Melissa Durham, Logistics Information Service Branch Chief[2] Justin Beck, and Branch Chief[3] Veronica White. Beck and White provided feedback, observation, and recommendation on the results of the BBIs. But, Melissa Durham was ultimately the Selecting Officer in that she made the final decision on who to advance to the two vacant positions.

24.    Durham did not conduct the BBI in conformance with the DLA's normal hiring and promotional procedures. Normally, the BBI consists of standardized questions that are posed to the applicants. Here, Melissa Durham chose to disregard the standard questions and drafted her own questions. Normally, interviewees are given the BBI questions in advance of the interview to permit them to consider appropriate responses. Here, Plaintiff was not provided the questions in advance.

25.    Ultimately, Durham chose Jameson Ford and Adam Cook for the two vacant positions.

26.    Jameson Ford was born in 1984.

27.    Adam Cook was born in 1987.

28.    Both Ford and Cooks were under 40 years of age when Durham chose them for the positions. They were, respectively, 12 and 15 years Plaintiff's junior.

29.    Jameson Ford was, and still is, a personal friend of Melissa Durham. The two, in fact, had been on camping trips together which they had posted on social media prior to her deciding to give the Position to Ford. Ford and Durham's families remain close and continue to take camping trips together, as recently as August of this year. Ford was dangerously unqualified for

---

[2] JS34A-AD, GS-13
[3] J34A-EB, GS-13

the position because he had virtually *no* experience with NATO or the NATO cataloging system and is basically learning the system as he goes.

30.  On October 28, 2020 Plaintiff attended a feedback session with Melissa Durham where she discussed her reasons for passing him over for promotion. She stated at this time that his "resume was terrible" because it contained grammatical errors, his BBI was "bad" because he failed to provide detailed responses to the questions, his writing style not "good enough for Policies and Procedures" and he "did not do 12 work."

31.  Adam Cook's experience was similar to Plaintiff's. The only thing to recommend him over Plaintiff was his younger age.

32.  Jameson Ford, Durham's camping buddy, also had several grammatical errors in his resume. Durham, upon information and belief, tailored the questions she asked in the BBI to fit Ford's skills and history. He also had never done "12 work."

33.  Durham's decision to promote Jameson Ford and Adam Cook was made, in substantial part, on her preference for younger individuals.

## COUNT 1 – AGE DISCRIMINATION
### *In Violation of the ADEA*
**29 USC § 633a**

34.  Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

35.  Federal agencies are barred from discrimination against persons by reason of attaining the age of 40 or over by the Age Discrimination in Employment Act, 29 USC § 633a. Plaintiff, at age 47, is therefore a member of a protected class.

36.    Plaintiff was qualified for the position he sought. The Defendant proved this by advancing him to an interview after initial screening of his resume.

37.    Plaintiff was considered for, but denied the promotion to either of the two vacant Positions.

38.    The individuals who *were* promoted to the vacant positions were both *less than 40* years old.

39.    On October 28, 2020 Plaintiff attended a feedback session with Melissa Durham where she discussed her reasons for passing him over for promotion. She stated at this time that his "resume was terrible" because it contained grammatical errors, his BBI was "bad" because he failed to provide detailed responses to the questions, his writing style not "good enough for Policies and Procedures" and he "did not do 12 work."

40.    Adam Cook's experience was similar to Plaintiff's. The only thing to recommend him over Plaintiff was his younger age.

41.    Jameson Ford, Durham's camping buddy, also had several grammatical errors in his resume. Durham, upon information and belief, tailored the questions she asked in the BBI to fit Ford's skills and history. He also had never done "12 work."

42.    Further, Jameson Ford's *complete lack* of experience with NATO systems *clearly* establishes that he was an inferior candidate for the position.

43.    The Defendant's stated reason for the decision to promote the younger individuals is therefore a blatant pretext for discrimination.

44.    As a result of the foregoing, Plaintiff has suffered

    a.    Lost wages,

    b.    Attorney's fees in opposing same.

45.   Plaintiff is also entitled to liquidated damages, by reason of Defendants' willful and wanton conduct described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. An ORDER immediately instating him to the Logistics Data Analyst, GS-0301-12, position or its reasonable equivalent;

2. ECONOMIC DAMAGES including, but not necessarily limited to, lost front pay and benefits from the paid position he was denied;

3. LIQUIDATED DAMAGES by reason of Defendant's willful and wanton violation of his rights;

4. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of his rights described herein, pursuant to the various statutes identified herein;

5. Pre and post judgment interest at the appropriate statutory rate, and

6. Such other relief as this Court may deem just and appropriate in law or in equity.

### PLAINTIFF DEMANDS A JURY

Respectfully Submitted,

Dated:  10/1/2021

_/s/  Collin H. Nyeholt_____
Collin H. Nyeholt,
Attorney for the Plaintiff